UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEAN HERMOSILLO,

    Plaintiff,

    v.                                             Case No. 20-C-597

KEVIN A. CARR,
DYLAN RADTKE,
LIEUTENANT RETZLAFF, and
JOHN LANNOYE,

    Defendants.

## SCREENING ORDER

Plaintiff Dean Hermosillo, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on Plaintiff's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Plaintiff has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed and paid an initial partial filing fee of $1.52. Plaintiff's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The court has a duty to review the complaint and dismiss the case if it appears that the complaint fails to state a claim upon which relief can be granted. *See Hoskins v. Polestra*, 320 F.3d 761, 763 (7th Cir. 2003). In screening a complaint, I must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

A complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that, on February 28, 2020, he and his cellmate were in their cell just after lunch. Plaintiff had come down with an illness and had trouble controlling his bowels for the past 36 hours. At 10:45 a.m., Correctional Officer Fieldhouse and another correctional officer came to their cell and pulled Plaintiff and his cellmate out for a strip search and cell search. As Plaintiff and his cellmate were being escorted to the strip-search cage, Plaintiff's cellmate handed something to another inmate and said, "Flush this!" Compl. ¶ 5, Dkt. No. 1. The correctional officers escorting Plaintiff and his cellmate recovered the contraband, which was alleged to be marijuana and pills. After Plaintiff was strip searched and found to possess no contraband, Plaintiff alerted officers that he needed to use the bathroom because he was on the verge of defecating on himself. The officers responded that Plaintiff was about to go back to his cell.

Lieutenant Retzlaff approached and told the officers to give Plaintiff a urinalysis. Plaintiff asked Sgt. Lannoye if he could go to the bathroom because he was ill and could barely hold it. Lannoye told Plaintiff he would have to pee in the cup first. Plaintiff told Lannoye that he would probably defecate on himself because his stomach "is messed up." *Id.* ¶ 12. Plaintiff asked Retzlaff if he would allow Plaintiff to use the toilet, and Retzlaff responded that Plaintiff could use the toilet once he urinates. Plaintiff alleges that he told Lannoye and Retzlaff that if he squeezed to urinate, he would most likely defecate on himself. Plaintiff proceeded with the urinalysis because he would be given a failed urinalysis and be taken to segregation if he did not comply. He alleges that he put a paper towel in the back of his boxer briefs and, as soon as he began urinating, he began to defecate on himself. Plaintiff advised that he was defecating, and Lannoye told him to sit down on the toilet and finish. Retzlaff, Lannoye, Hoenator, and the other correctional officers began laughing at Plaintiff. Plaintiff claims he felt humiliated and had fecal

matter all over him.  Lannoye wet some paper towels and handed them to him to clean himself off because he had fecal matter on himself and in his shorts.  Plaintiff cleaned himself the best he could and proceeded with the urinalysis.

Plaintiff asked Retzlaff if he could tell the cell hall to allow Plaintiff to take a shower, as the showers only ran twice a week.  Plaintiff returned to his cell at 11:30 a.m. but was not able to shower until 3:30 p.m.  Plaintiff had a meeting with his social worker at 12:30 p.m. and was required to attend the mandatory meeting without being showered.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).  Plaintiff claims that Kevin Carr and Dylan Radtke violated his constitutional rights by creating and implementing a policy directing staff to prohibit inmates from defecating prior to giving a urine sample.  A supervisory official may be personally involved in a constitutional violation by "formulating and directing an unconstitutional policy." *Del Raine v. Williford*, 32 F.3d 1024, 1052 (7th Cir. 1994).  The Supreme Court recognizes that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1517 (2012).  The court explained that "the task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional experience of corrections officials," so that, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to

4

these considerations[,] courts should ordinarily defer to their expert judgment in such matters." *Id.* In other words, prison officials are given wide latitude to create policies in the interest of security in the facility. *Id.*

Plaintiff asserts that the defendants implemented an unconstitutional policy that led to his injuries. But the rule requiring that correctional officers ask for a urine sample before an inmate can sit down on the toilet is reasonable, as it prevents inmates from easily emptying their bladders or destroying evidence before a urine sample is collected. Prison by its very nature deprives inmates of the privacy people generally enjoy on the outside. An upset stomach presents difficulty that can be humiliating and embarrassing, even for individuals who are not incarcerated. Although Plaintiff's experience was unfortunate, his complaint contains no allegations from which the court can infer that the policy is not reasonably related to legitimate penological interests. *See id.* Accordingly, Plaintiff has failed to state a claim against these defendants.

Plaintiff also asserts that Lieutenant Retzlaff and John Lannoye violated his Eighth Amendment rights when they refused to let him use the toilet before his urinalysis, resulting in Plaintiff defecating on himself. A prisoner states a claim under the Eighth Amendment "when he plausibly alleges that the [incident] in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order or security." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). Although Plaintiff asserts that Retzlaff and Lannoye subjected Plaintiff to humiliating and dehumanizing conditions, he does not allege that the search was designed by the defendants to harass or punish Plaintiff, or that it was not legitimately related to penological interests. Again, the rule requiring that inmates complete the collection portion of the urinalysis before sitting down to use the toilet is reasonable. The allegation that Retzlaff, Lannoye and other correctional officers were laughing at Plaintiff, if true, reflects a callous disregard for

5

Case 2:20-cv-00597-WCG   Filed 07/14/20   Page 5 of 8   Document 14


Plaintiff's feelings by correctional officers that ill befits their profession, but it does not rise to the level of an Eighth Amendment violation. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). It thus follows that Plaintiff has failed to state a claim against Retzlaff and Lannoye.

Plaintiff also asserts a failure to train claim. To prevail on a failure to train claim, the plaintiff must sufficiently allege that he suffered an underlying constitutional violation. *See Los Angles v. Heller*, 475 U.S. 796, 799 (1986). Because Plaintiff has failed to allege that he suffered a constitutional violation, it follows that he cannot proceed on his failure to train claim. Accordingly, this claim against Radtke, Retzlaff, and Lannoye will be dismissed.

Plaintiff has failed to state a claim upon which relief can be granted and therefore his complaint is dismissed without prejudice. If Plaintiff wants to proceed, he must file an amended complaint curing the deficiencies in the original complaint as described herein. Such amended complaint must be filed on or before **August 13, 2020**. Failure to file an amended complaint within this time period will result in dismissal of this action.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If an amended complaint is received, it will be screened pursuant to 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that on or before **August 13, 2020**, Plaintiff shall file an amended pleading curing the defects in the original complaint as described herein.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $348.48 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Honorable William C. Griesbach
>c/o Office of the Clerk
>United States District Court
>Eastern District of Wisconsin

7

Case 2:20-cv-00597-WCG   Filed 07/14/20   Page 7 of 8   Document 14

125 S. Jefferson Street, Suite 102
Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Dated at Green Bay, Wisconsin this 14th day of July, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge